1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

| | |
|---|---|
| JOSHUA HESTER, individually,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR DAMAGES<br><br>JURY DEMAND |

15

## 1.      IDENTIFICATION OF PARTIES

16

17

1.1     Plaintiff, Joshua Hester, is an adult U.S. citizen, and resident of the State of Washington.

18

19

20

21

1.2     Defendant, NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK (AMTRAK), is a corporation organized and existing under the laws of the United States of America with a principal place of business in Washington, D.C.  Defendant AMTRAK has an office for the transaction of business, and transacts business in King County, Washington.

22

23

24

1.3     There may be unknown entities or "John Does" who may be at fault and when their identification becomes known, these pleadings may be amended accordingly.  This may include but is not limited to those entities owning the tracks or cars, as well as those entities involved in

COMPLAINT FOR DAMAGES - 1

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

the design or construction of the route, or in the operation of rail service, directly or through

contractors and agents, such as Central Puget Sound Regional Transit Authority, a/k/a Sound

Transit, a Washington municipal corporation, and/or the Washington State Department of

Transportation, a/k/a WSDOT.

## 2.   JURISDICTION AND VENUE

2.1    The court has federal question jurisdiction over the claims asserted herein pursuant

to 28 U.S.C. § 1331, because, on information and belief, AMTRAK is a congressionally

incorporated corporation, over half of whose capital stock is owned by the federal government.

Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to the claim occurred in this district, and

AMTRAK is subject to the court's personal jurisdiction with respect to this claim.

## 3.   NATURE OF OCCURRENCE

3.1.    On and before December 18, 2017, Defendant AMTRAK was a corporation doing

business as a common carrier engaged in the transportation of passengers between various

destinations in the states of Washington and Oregon.

3.2    On December 18, 2017, Defendant AMTRAK through its employees and/or agents,

operated, managed, maintained, supervised, owned, designed, constructed and/or controlled

AMTRAK Train No. 501, which originated in Seattle, Washington and was destined for other

stops.

3.3    At approximately 7:33 a.m., AMTRAK Train No. 501 traveled on a segment of

railroad track about 40 miles south of Seattle, Washington that was operated, managed,

maintained, supervised, owned, designed, constructed and/or controlled, or contracted to operate,

manage, maintain, supervise, own and/or control by Defendant AMTRAK.  AMTRAK Train No.

COMPLAINT FOR DAMAGES - 2

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

501 was operated by employees and/or agents of Defendant AMTRAK.

3.4     A sharp and dangerous curve existed on this segment where the railroad track crossed over I-5 from west to east.

3.5     On December 18, 2017, at approximately 7:33 a.m., AMTRAK Train No. 501 approached the curve and bridge crossing I-5 at a speed greatly exceeding the authorized, posted, safe and lawful speed limit for this segment of the track.

3.6     AMTRAK Train No. 501 derailed through the curve and at the bridge crossing I-5. Several of the cars, including the lead locomotive, derailed onto the southbound lanes of I-5.

3.7     On the morning of December 18, 2017, Joshua Hester went to his place of employment in Lacey, Washington. A professional truck driver with a commercial driver's license, Joshua picked up his semi-truck along with some shop rags and headed north to a customer in Tacoma. Before getting on the interstate, he stopped to fuel his truck and bought two gallons of water.  He then entered I-5 north at the entrance just south of the Nisqually River.

3.8     As he reached the immediate vicinity of the railroad overpass, he heard a very loud sound. He believed it was a bomb, and that this was a terrorist attack, especially because the site was only a short distance from Joint Base Lewis McChord. He could feel strong vibrations produced by whatever made the sound.  He could see sparks and flying debris through the trees at the overpass.  Whatever was occurring, he knew that this was an emergency situation and that he and others were in danger.  Joshua Hester had never been as scared in his life as at this moment.

3.9     He immediately slowed and pulled his truck over to the right shoulder of the interstate, just past the railroad overpass. He could see that there was a major, catastrophic train crash.  Train cars and parts were in the road and on top of other road vehicles.  Some of the derailed

COMPLAINT FOR DAMAGES - 3

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

train cars were hanging precariously over the side of the overpass, appearing almost vertical from the ground.  One train car was upside down on top of another train car.

3.10    Joshua Hester jumped out of his truck and crossed the northbound lane of the interstate to assist.  There was pandemonium.  People were screaming to get out of the derailed cars.  They needed assistance.  Joshua Hester saw someone on the ground who appeared to be deceased and covered the person up.  He applied a tourniquet to someone whose arm was bleeding badly.  He and others began pulling passengers out of the trains and getting them to the ground.  Joshua Hester was assisting victims before first responders arrived.   The situation was dangerous to Joshua because the train cars did not appear to be stable.

3.11    Joshua returned to his truck to retrieve water and shop rags to use as tourniquets.  Joshua knew he was going into shock in response to the scene. Joshua does not have a functioning pituitary gland because of prior brain surgeries and accompanying radiation. As a result, his body does not produce adrenaline in times of danger, leaving him vulnerable to shock. He realized that he could not safely remain on the scene and in the zone of danger. He gave the water and shop rags to someone to help the injured.  First responders had begun to arrive.

3.12    Joshua drove his truck from the scene, heading towards Tacoma. As he drove, his physical reaction and symptoms of shock worsened, including seeing white dots. His doctors had warned him about these shock symptoms.  He was afraid he was going to pass out.  He pulled over and administered his prescribed medical care intended for just such a medical emergency.  He took twenty prednisone which was prescribed to carry with him and to self-administer in the event he began going into shock. When he arrived to make his delivery in Tacoma, he parked and left his truck.  A fellow employee had to come and drove him back.  He required medical care for his injuries, which is ongoing.

COMPLAINT FOR DAMAGES - 4

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

3.13    This public health and safety tragedy was foreseeable and preventable by Amtrak. At all times relevant to this accident, Defendant AMTRAK equipped AMTRAK Train No. 501 with the federally recommended Positive Train Control system (hereinafter "PTC"), but knowingly failed to make the system operable.

3.14    In 2008, Congress enacted the Rail Safety Improvement Act of 2008 (RSIA), which requires passenger railroads to install a PTC system no later than the end of 2015.

3.15    The PTC systems mandated by Congress were designed specifically to increase safety and prevent derailments caused by excessive speeds, among other purposes.

3.16    PTC provides real-time information to train crew members about, among other things, the areas in which a train must be slowed or stopped and the speed limits at approaching curves and other reduced-speed locations.

3.17    PTC also warns the train crew of the train's safe braking distance in curved or reduced-speed locations and displays the same on screens inside the locomotive's cab.

3.18    If the engineer does not respond to the ample warnings and on-screen displays, the PTC system will automatically activate the brakes and safely slow or stop the train.

3.19    At all times relevant hereto, PTC systems were affordable, available, feasible, and intended to improve safety.

3.20    Defendant AMTRAK knowingly and intentionally failed to utilize an operable PTC or similar safety control system on the AMTRAK Train No. 501 and the segment of railroad track where this tragic and preventable derailment occurred.

3.21    The failure to have PTC was a factor that caused AMTRAK Train No. 188 to derail in Philadelphia, Pennsylvania, in 2015 and to cause other derailments, collisions and injuries known to defendant.

COMPLAINT FOR DAMAGES - 5

3.22    The NTSB has been recommending train control systems for safety for years.  Prior to December 18, 2017, Defendant AMTRAK knew that PTC systems safeguarded their transportation system, prevented derailments, and precluded injuries.

3.23    Defendant AMTRAK failed to use available train control systems and other safety technologies that would have prevented the derailment and injuries to Plaintiff, and failed to warn the public it was marketing, selling, and operating commercial transportation without this long-recommended safety device.

## 4.    NATURE OF LIABILITY

4.1    Plaintiff's injuries, damages, and losses were proximately caused by Defendant AMTRAK's wrongful conduct under common law, federal and state statutes and regulations, rendering defendant liable and at fault for all injuries and damages.

4.2    On December 18, 2017, Defendant AMTRAK, through its agents and/or employees, was a common carrier and owed Joshua Hester the highest duties of care, as well as duties of ordinary and reasonable care.

4.3    Defendant AMTRAK, through its agents and/or employees, was at fault and violated the highest duty of care, including but not limited to one or more of the following ways:

a.    Failed to slow its train when it knew or should have known that the speed was too fast for the sharp and dangerous curve;

b.    Operated the train in excess of the authorized, posted, safe, and lawful speed limit;

c.    Failed to install and render operable proper train-control safety and speed systems;

d.    Operated the train without keeping a safe and proper lookout;

e.    Failed to comply with Defendant's own operational and safety plan, rules, standards, and procedures;

COMPLAINT FOR DAMAGES - 6

LUVERA LAW FIRM
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

f.     Failed to comply with the applicable federal standards of care, including, but not limited to, the failure to comply with applicable federal statutes or regulations;

g.     Failed to properly train its agents and/or employees in the safe operations of the train;

h.     Failed to properly supervise its agents and/or employees in the proper operation of the train.

4.4     Defendant AMTRAK is also liable for punitive and/or exemplary damages under choice of law principles for the reckless and/or willful disregard of the rights and safety of the passengers and the public.

### 5.     INJURIES, HARM AND DAMAGES

5.1     As a direct and proximate result of one or more of the above acts and/or omissions of the Defendant AMTRAK, Amtrak placed Plaintiff within the zone of danger. As a direct and proximate result of one or more of the above acts and/or omissions of the Defendant AMTRAK, Plaintiff has suffered serious physical and emotional injuries, requiring past and future medical care, disability, loss of enjoyment of life, pain, anxiety, distress and emotional trauma, physical impairment, pecuniary and economic losses, and other injuries, harm, and noneconomic damages which are ongoing and the total amount of which will be proven at trial, as well as economic damages including, but not limited to, lost wages and earnings, and lost earnings capacity.

### 6.     RELIEF CLAIMED

6.1     Plaintiff claims all economic and non-economic damages, along with all compensatory, pecuniary, and exemplary damages.

6.2     Plaintiff reserves the right to seek other damages as appropriate.

///

///

COMPLAINT FOR DAMAGES - 7

**LUVERA LAW FIRM**
ATTORNEYS AT LAW

6700 COLUMBIA CENTER • 701 FIFTH AVENUE
SEATTLE, WASHINGTON  98104
(206) 467-6090

WHEREFORE, Plaintiff prays for judgment against Defendant, NATIONAL RAILROAD

PASSENGER CORPORATION d/b/a AMTRAK, in such amount as will be proven at the time of

trial, together with such other and further relief as the jury or court deems appropriate.

DATED this 11th day of December 2020.

LUVERA LAW FIRM

*/s/ David M. Beninger*
David M. Beninger, WSBA #18432
*/s/ Andrew Hoyal*
Andrew Hoyal, WSBA #21349
701 Fifth Avenue, Suite 6700
Seattle, WA  98104
Telephone: (206) 467-6090
david@luveralawfirm.com
andy@luveralawfirm.com

Attorneys for Plaintiff Hester

COMPLAINT FOR DAMAGES - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Hester herein request a jury

trial by a jury of twelve in the above-referenced matter.

DATED this 11th day of December 2020.

<div style="margin-left: 40%;">

LUVERA LAW FIRM

*/s/ David M. Beninger*
David M. Beninger, WSBA #18432
*/s/ Andrew Hoyal*
Andrew Hoyal, WSBA #21349
701 Fifth Avenue, Suite 6700
Seattle, WA  98104
Telephone: (206) 467-6090
david@luveralawfirm.com
andy@luveralawfirm.com

Attorneys for Plaintiff Hester

</div>

COMPLAINT FOR DAMAGES - 9