UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSHUA HESTER,<br><br>           Plaintiff,<br><br>   v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>           Defendant. | CASE NO. C20-6202BHS<br><br>ORDER |

THIS MATTER is before the Court on Defendant National Railroad Passenger Corporation's (Amtrak's) Motion to Dismiss, Dkt. 5.

The case arises out of the December 18, 2017, derailment of Amtrak 501 as it crossed Interstate 5 near DuPont, Washington. Plaintiff Joshua Hester was driving a semi-truck northbound on I-5 when the train crashed onto the southbound lanes. He pulled over, got out of his truck, and ran across the freeway to assist. Hester covered a deceased passenger, applied a tourniquet to another, and helped passengers out of the train. He then returned to his truck for more water and rags (for tourniquets) to assist the injured. Hester arrived at the scene before any first responders. He was not injured

ORDER - 1

himself and he did not have a familial or other personal relationship with any of the victims he saw or assisted.

Hester does not have a functioning pituitary gland and as a result cannot produce adrenalin, making him more likely to go into shock. He carries a steroid, prednisone, for use if he is experiencing symptoms of shock. Hester began experiencing shock systems, and when the first responders arrived, he left. He took the prednisone and made a scheduled delivery but was unable to complete his work that day.

Hester sued in December 2020, claiming that Amtrak owed him the "highest duty of care," Dkt. 1 at 6, that it knowingly and intentionally failed to utilize the "Positive Train Control" (PTC) system on Amtrak 501, and that it acted negligently, recklessly and/or willfully. Dkt. 1 at 7. He claims the event caused him emotional distress, lost wages, and other damages. *Id*.

Amtrak seeks dismissal under Fed. R. Civ. P. 12(b)(6), arguing that Hester's negligent infliction of emotional distress ("NIED") claim for damages caused by putting himself in the "zone of danger" fails as a matter of law because in Washington, that damages theory has been abandoned. The zone of danger rule permits recovery for negligent infliction of emotional distress where the plaintiff suffers physical impact, or the immediate threat of such impact. Dkt. 5 at 5 (citing *Hunsley v. Giard*, 87 Wn.2d 424, 431-32 (1976)).

Amtrak contends Washington instead now employs the "bystander proximity" rule, which does not permit NIED recovery where an uninjured plaintiff not involved in

the accident did not have a familial relationship with any of the victims. Dkt. 5 at 4 (citing *Hunsley* and *Hegel v. McMahon*, 136 Wn.2d 122 (1998)).

Amtrak also anticipates that Hester will assert a right to recover damages under the "rescue doctrine," and asserts that he cannot plausibly state an NIED damages claim under that doctrine, because he did not suffer any physical injuries.

Hester counters first that he pled (and that the plaintiffs in related Amtrak 501 derailment cases have plausibly alleged) that Amtrak acted willfully, and that its motion does not address that claim. Dkt. 7 at 2 (citing *Kloepfel v. Bokor*, 149 Wn.2d 192, 200 (2003) ("where mental suffering or emotional distress is caused by a willful act, recovery is permitted.")). He also argues that the zone of danger theory is still viable, notwithstanding *Hunsley's* recognition of the bystander proximity rule. Dkt. 7 at 3 (citing *Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 810 (1985) (plaintiff may recover mental distress damages "where there is an invasion of a plaintiff's person or a direct possibility thereof.")).

Next, Hester argues that NIED damages are not limited to cases involving injuries to family members. He claims that he is entitled to recover where Amtrak's negligence was directed to him. Dkt. 7 at 4.

Finally, Hester argues that he was a rescuer under Washington's rescue doctrine, and the fact he suffered only emotional, and not physical, damages does not preclude recovery. He claims no Washington case has denied recovery under the rescue doctrine where the damages are limited to emotional distress. Dkt. 7 at 4.

The issues are addressed in turn.

A.      Discussion

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555.).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in

dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.      Hester alleged that Amtrak acted willfully.**

As an initial matter, Hester pled willful conduct, and Amtrak's Motion does not argue that his claim is not plausible; it does not address the allegation at all. Amtrak's Reply, Dkt. 9, does argue that Hester's "willful conduct" claim is not plausible, or at least that the complaint does not contain factual allegations supporting such a conclusion. It acknowledges that it did not raise this issue in its motion, but asks the Court to consider the argument, nevertheless, in its discretion. Dkt. 9 at 2, n. 1 (citing *McGeer v. BNSF Ry. Co.*, No. C09-5330-BHS, 2013 WL 1499053, at *2 (W.D. Wa. April 10, 2013) ("Although '[t]he district court need not consider arguments raised for the first time in a reply brief,' it nevertheless has the discretion to do so.")).

Hester's Complaint alleges that Amtrak "knowingly and intentionally" failed to utilize the PTC which was already aboard Amtrak 501. Dkt. 1 at 5. Amtrak concedes that other derailment plaintiffs represented by Hester's counsel have made similar "willfulness" allegations, and that Amtrak "has always denied that it acted with willful disregard." Dkt. 9 at 3-4, n. 2. This may be true, but it also demonstrates that Amtrak was aware of the issue and could have raised it in its motion.

The other derailment plaintiffs have alleged that Amtrak's conduct was willful, supporting a claim for punitive damages under the law of Oregon or Delaware. This Court has dismissed the related plaintiffs' punitive damages claims on choice-of-law grounds, but it has not held that the plaintiffs' willfulness allegations were not plausible,

or that Amtrak's conduct was not "particularly egregious," supporting a claim for emotional damages. *See Freeman v. National Railroad Passenger Corp.*, Cause No. 18-cv-5584BHS at Dkt. 105 (November 16, 2020).

Amtrak argues, correctly, that a plaintiff may not effectively amend his complaint in a Response to a Motion to Dismiss. Dkt. 9 at 3. At the same time, however, even in the face of a motion to dismiss properly asserting that a claim is not plausible, a plaintiff is generally entitled a chance to amend his pleading to assert a plausible claim, unless doing so would be futile. *Cook, Perkiss & Liehe*, 911 F.2d at 247.

Hester's claim that Amtrak's willful conduct led to his damages is plausible, and in the context of this motion and this case he need not amend his complaint to flesh it out further.

Amtrak's Motion to Dismiss Hester's claim for emotional distress damages based on the allegation that Amtrak acted willfully is **DENIED**. Hester's Motion to Strike Amtrak's argument, Dkt. 11, is **DENIED** as moot.

**C.    The Zone of Danger and Bystander Proximity Rules are not mutually exclusive.**

Hester's complaint for NIED damages asserts that he suffered emotional damages when he was in the "zone of danger" and assisted victims of the derailment. Amtrak argues Washington has abandoned the "zone of danger" rule in favor of the "bystander proximity" rule for recovering NIED damages. It argues that to recover such damages under the latter, Hester must demonstrate that he knew or had a familial relationship with

the derailment victims he viewed and assisted. Dkt. 9 at 4-5 (citing *Hunsley*, 87 Wn.2d at 435; *Hegel*, 136 Wn.2d at 126).

The zone of danger rule holds that one seeking to recover NIED damages for an incident in which they were not physically injured must show that they were physically *impacted*, or that there was an immediate threat of a physical impact. *See Murphy v. Tacoma*, 60 Wn.2d 603, 620-21 (1962) (emphasis added). Amtrak argues that the Washington Supreme Court "appeared" in *Hunsley* to have abandoned this test in favor of the (less restrictive) "bystander proximity" rule. It argues that Hester's allegation that he was in the zone of danger, facing the immediate threat of physical impact from the derailment, is insufficient to support his NIED claim as a matter of law. It argues that instead, as a bystander who came upon the scene, he cannot recover because he did not have a familial relationship with, or even know, any of the victims. Dkt. 5 at 8.

In *Hunsley*, the defendant drove his car into back of Hunsley's home, where her husband was giving a piano lesson. Hunsley was in the home but not in the back. No one was injured, but Hunsley alleged she suffered emotional distress based on her fear of injury to herself, her husband, and the piano student. The Washington Supreme Court permitted Hunsley's NIED claim. Its opinion is both thorough in its discussion of precedent and vague in its holding, and the facts and the result are, as Amtrak argues, somewhat anomalous. *Hunsley* held that a plaintiff in Hunsley's position need *not* prove "any physical impact or the thereat of an immediate physical invasion of the plaintiff's personal security"—she did not have to be in the zone of danger—to sustain an NIED claim. *Hunsley,* 87 Wn.2d at 435. Instead, *Hunsley* "dispens[ed] with the *previous*

*limiting requirement* that the plaintiff be within the zone of danger," and broadly held that, under general tort principles, "[i]f the specific harm was foreseeable to the defendant, he had a duty to avoid it and could be liable." *Hegel*, 136 Wn.2d at 126 (emphasis added).

As *Hegel* methodically catalogues, *Hunsley's* broad "foreseeability" rule has been curtailed in subsequent cases, and a true bystander—one who simply witnesses the aftermath of an accident—must at least be a relative to recover NIED damages. *Id*. at 132.

But Amtrak's contention that Washington has abandoned the "zone of danger" theory of recovery in favor of the revised *Hunsley* "bystander proximity" rule is not correct. *Hegel* does not so hold. *Hegel* dealt with "bystander negligent infliction of emotional distress claims involving emotional trauma resulting from one person's observation or discovery of another's negligently inflicted physical injury." *Id.* at 125-126. It held that such a plaintiff need not be actually present at the time of the injury to assert a viable NIED claim, but that it is sufficient if the plaintiff observes "an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location." *Id*. at 132. It contrasted such a plaintiff with a relative who suffered despair on hearing of the death or injury of a loved one. *Id*. at 127 (citations omitted).

The theories are not mutually exclusive. They do not even apply in the same context. The zone of danger rule permits NIED damages where the defendant's conduct reasonably causes the plaintiff emotional distress where she, herself, is physically

impacted by the event, or where the threat of physical impact is immediate. *See Murphy*, 60 Wn.2d at 620-21; *Hunsley*, 87 Wn.2d at 431; *Wilson*, 40 Wn. App. at 809–10 and *Hegel*, 136 Wn.2d at 126. A bystander who comes upon the scene after the fact can recover for resulting emotional distress only if she witnesses injury to a "family member," and even then only where the scene has not substantially changed. *Hegel*, 136 Wn.2d at 132.

*Hunsley* expanded the class of persons who could assert an NIED claim; it did not abandon the prior "zone of danger" rule. Thus, a man walking on a road when airplane crashes next to him, without physically injuring him is not a bystander. If he suffered reasonably foreseeable emotional distress with objective symptomology, from the immediate threat of physical impact or injury, he has an NIED claim against the negligent pilot or airline. The fact that he did not know the passengers who were injured does not bar his claim, because he is not claiming as a familial bystander under *Hegel*; he is claiming he suffered emotional damages resulting from being in the zone of danger.

The rule that a bystander must be present, or observe the situation before it has changed, to recover for the suffering caused by seeing a suffering family member does not logically or legally lead to the conclusion that one who is in the zone of danger, who is almost injured or killed himself, no longer has an NIED claim because he is not related to those injured in the same incident.

As Hester accurately points out, later Washington cases recognize both theories as viable, depending on the context of the injury:

> Under the later creation of a cause of action for negligent infliction of emotional distress, Washington recognized a broader rule whereby the bystander *may recover for emotional distress regardless of the possibility of invasion of her body space*. *Hunsley v. Giard*, 87 Wash.2d 424, 435, 553 P.2d 1096 (1976); *Hegel v. McMahon,* 136 Wash.2d 122, 126, 960 P.2d 424 (1998).
> The zone of danger doctrine still holds relevance, however. Under the zone of danger standard, the plaintiff need not prove objective symptoms to recover emotional distress damages. *Wilson v. Key Tronic Corp*., 40 Wash.App. 802, 809-10, 701 P.2d 518 (1985); *McRae v. Bolstad*, 32 Wash.App. 173, 178, 646 P.2d 771 (1982), *aff'd,*101 Wash.2d 161, 676 P.2d 496 (1984).

*Repin v. State*, 198 Wn. App. 243, 260, *rev. den'd* 188 Wn.2d 1023 (2017) (emphasis added); *see also Bylsma v. Burger King Corp*., 176 Wn.2d 555 (2013) (plaintiff could recover emotional distress damages where he saw but did not eat a hamburger with phlegm in it)

Hester has plausibly alleged that he was in the zone of danger. The fact that he was not related to the victims of the crash, and thus cannot recover under the bystander proximity rule as explained in *Hegel*, does not mean that he cannot recover NIED damages under Washington's zone of danger rule.

Amtrak's Motion to Dismiss on this basis is DENIED.

**D.    A rescuer can recover NIED damages notwithstanding the lack of physical injuries under Washington law.**

Finally, Amtrak claims that Hester cannot plausibly state a claim for NIED damages under the "rescue" doctrine. It argues that while a reasonable rescuer who suffers physical injury may recover from the tortfeasor, a rescuer suffering only emotional distress cannot plausibly assert an NIED claim under Washington law.

Amtrak argues that to be a rescuer, a plaintiff must demonstrate that (1) the unlawful acts of the defendant are the proximate cause of the danger to the other person; (2) the danger to the person is imminent; (3) a reasonably prudent person under the same conditions would determine that a peril existed; and (4) the rescuer must use reasonable care in effecting the rescue. Dkt. 5 at 8 (citing *McCoy v. American Suzuki Motor Corp.*, 136 Wn.2d 350 (1998)).

Amtrak argues that no Washington case has held that a rescuer may recover NIED damages, and that Hester's claim for such damages is therefore a novel one. It relies primarily on two older New England cases which held that, under the law of Massachusetts and Maine, respectively, a rescuer may not recover solely for emotional distress damages. Dkt. 5 at 12-13, (citing *Migliori v. Airborne Freight Corp.*, 426 Mass. 629, 638 (1998), and *Michaud v. Great Northern Nekoosa Corp.*, 1998 ME 213 (1998)). Amtrak argues that, like Washington, Massachusetts has "abandoned" the "zone of danger requirement and instead looks (only) at the familial relationship between the bystander and the victim. Dkt. 5 at 12. As discussed above, that assertion is not correct as to Washington.

Hester responds that he has plainly alleged facts falling within the rescue doctrine as articulated in *McCoy*, and that there is no Washington case holding that a rescuer cannot recover for emotional distress absent some physical injury. He cites a District of Columbia case holding that a rescuer can recover for emotional distress caused by entering the zone of danger. Dkt. 7 at 17 (citing *Destefano v. Children's Nat. Med. Ctr.*,

121 A.3d 59, 72 (D.C. 2015)). Hester argues that *Destefano* is consistent with well-settled Washington law on the zone of danger and the rescue doctrine. *Id*.

The Court agrees. First, Hester's claim for NIED damages as a rescuer is no more novel than is Amtrak's claim that Washington does not permit such recovery. There are no Washington cases addressing the issue. But the case that articulates the doctrine does not place on it the limits Amtrak asks this Court to impose.

Second, a rule that would permit a plaintiff in the zone of danger to recover emotional damages caused by the immediate threat of physical impact, *unless* that person then elected to assist in the rescue would make no sense. The purpose of the rescue doctrine is to (1) inform tortfeasors that it is foreseeable that a rescuer will come to the aid of the tort victim, and that he owes the rescuer a duty of care, and (2) to negate the presumption that the rescuer assumed the risk of injury by knowingly undertaking a dangerous rescue. *McCoy*, 136 Wn.2d at 355. The rule is intended to dissuade tortfeasors, and to protect rescuers. Amtrak's reading would do the opposite.

Hester was not a bystander as a matter of law; he has plausibly alleged that he was in the zone of danger, that he was a rescuer, and that he suffered emotional distress despite not being physically injured by the derailment or its aftermath. Amtrak's Motion to Dismiss, Dkt. 5, is **DENIED**. IT IS SO ORDERED.

Dated this 14th day of July, 2021.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 12